UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                       Case No. 09-20356

Andre Williams,                           Honorable Sean F. Cox

    Defendant.

_____/

## OPINION FINDING DEFENDANT TO HAVE VIOLATED THE CONDITIONS OF SUPERVISED RELEASE

On March 24, 2010, this Court held a supervised release violation hearing in this matter, which was continued on April 2, 2010. As set forth below, the Court concludes that the Government has established, by a preponderance of the evidence, that Defendant committed a "Grade A" violation of supervised release, along with three "Grade C" violations of supervised release.

BACKGROUND

In Case No. 05-00031, in the United States District Court for the Eastern District of Tennessee, Defendant Andre Williams ("Defendant") pleaded guilty to Count I of the Indictment, Conspiracy to Possess and Utter Counterfeit Securities in violation of 18 U.S.C. §§ 513(a) and 371. On March 10, 2006, Defendant was sentenced to 48 months imprisonment, followed by 3 years of supervised release. The sentencing court imposed standard conditions of supervision, and imposed the following special conditions of supervision:

1

    1)        The defendant shall participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

    2)        The defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release.

    3)        The defendant shall provide the probation officer with access to any requested financial information.

    4)        The defendant shall not incur new credit charges on existing accounts or apply for additional lines of credit without permission of the probation officer until the restitution has been paid in full. In addition, the defendant shall not enter into any contractual agreements which obligate funds without permission of the probation officer.

(Judgment at 4).

Defendant's supervised release was to be from February 20, 2009, to February 19, 2012. Defendant's supervised release was transferred to the Eastern District of Michigan on July 1, 2009, at which time this action (Case No. 09-20356) was opened.

On February 11, 2010, Defendant's Probation Officer, Corey Elder, filed a "Petition for Warrant or Summons for Offender Under Supervision" ("the Petition"). (Docket Entry No. 2). The Government alleges that Defendant has violated the following conditions of supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1. | <u>Violation of Mandatory Condition:</u> "THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME." |
| 2. | <u>Violation of Mandatory Condition:</u> "THE DEFENDANT SHALL NOT POSSESS A FIREARM, DESTRUCTIVE DEVICE, OR ANY OTHER DANGEROUS WEAPON." |

3.	Violation of Standard Condition No. 7: "THE DEFENDANT SHALL REFRAIN FROM EXCESSIVE USE OF ALCOHOL, AND SHALL NOT PURCHASE, POSSESS, USE, DISTRIBUTE, OR ADMINISTER ANY CONTROLLED SUBSTANCE OR ANY PARAPHERNALIA RELATED TO ANY CONTROLLED SUBSTANCES, EXCEPT AS PRESCRIBED BY A PHYSICIAN."

4.	Violation of Standard Condition No. 8: "THE DEFENDANT SHALL NOT FREQUENT PLACES WHERE CONTROLLED SUBSTANCES ARE ILLEGALLY SOLD, USED, DISTRIBUTED, OR ADMINISTERED."

	On August 27, 2009, officers of the Redford Township Police Department and agents of the Drug Enforcement Administration (DEA) executed a state search warrant at 8452 Heyden, Redford Township, Michigan. The offender was one of four individuals located in the residence. A search of the offender's person revealed $10,195.00 in United States currency concealed in his right front pocket. Also in the home, were numerous large bags of marijuana, one loaded shotgun, drug packaging paraphernalia, and pictures of the offender.

5.	Violation of Special Condition No. 2: "THE DEFENDANT SHALL PAY ANY FINANCIAL PENALTY THAT IS IMPOSED BY THIS JUDGMENT, AND THAT REMAINS UNPAID AT THE COMMENCEMENT OF THE TERM OF SUPERVISED RELEASE."

	The offender was originally sentenced to pay restitution in the amount of $67,013.87 and he currently owes $65,797.87. Since the start of his supervision, the offender has paid $25.00 on June 15, 2009, and again on September 9, 2009.

6.	Violation of Standard Condition No. 2: "THE DEFENDANT SHALL REPORT TO THE PROBATION OFFICER AND SHALL SUBMIT A TRUTHFUL AND COMPLETE WRITTEN REPORT WITHIN THE FIRST FIVE DAYS OF EACH MONTH."

	On September 2, 2009, the offender submitted a written monthly report whereby he answered "No" to being questioned by police, having any contact with anyone with a criminal record, possessing illegal drugs, being arrested, or having access to a firearm. These reports are considered untrue due to the circumstances of the offender's August 27, 2009 police contact.

7.	Violation of Standard Condition No. 9: "THE DEFENDANT SHALL NOT ASSOCIATE WITH ANY PERSONS ENGAGED IN CRIMINAL ACTIVITY AND SHALL NOT ASSOCIATE WITH ANY PERSON CONVICTED OF A FELONY, UNLESS GRANTED PERMISSION TO DO SO BY THE PROBATION OFFICER."

> Three convicted felons, Eric Wilson, Makonda Beasley, and Leonard Tompkins were all presented with the offender during the August 27, 2009, search warrant in Redford Township, Michigan.

8. <u>Violation of Standard Condition No. 11:</u> "THE DEFENDANT SHALL NOTIFY THE PROBATION OFFICER WITHIN SEVENTY-TWO HOURS OF BEING ARRESTED OR QUESTIONED BY A LAW ENFORCEMENT OFFICER."

> This officer was never notified by the offender of his police contact on August 27, 2009.

(Petition at 2-3). On February 17, 2010, this Court ordered the issuance of the requested summons.

On March 3, 2010, the parties appeared before the Court. Defense Counsel confirmed that Defendant has received written notice of the alleged supervised release violations and that he has the initial Presentence Report. Both the Government and Defense Counsel indicated that they needed some time to prepare for the hearing and agreed to a March 24, 2010 hearing.

SUPERVISED RELEASE REVOCATION HEARING

On March 24, 2010, Defendant pleaded guilty to having committed Violation No. 6 and Violation No. 8. The Court then held the supervised release revocation hearing to determine whether Defendant committed any of the remaining alleged violations. The hearing was continued on April 2, 2010.

Twenty seven exhibits were admitted at the hearing, including: 1) the August 24, 2009 search warrant for 8452 Heyden; 2) numerous pictures taken on August 27, 2009, during the execution of the search warrant; 3) Defendant's August 2009 Monthly Supervision Report; and 4) the laboratory report analyzing the drugs seized during the execution of the search warrant.

The Government called the following witnesses: 1) Officer Brian Jones; 2) Officer Eric Woodall; 3) Officer Jonathan Strong; and 4) Probation Officer Corey Elder. Defendant did not

call any witnesses.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

After consideration of the testimony and exhibits presented at the evidentiary hearing, drawing inferences as appropriate, weighing the evidence and assessing the credibility of the witnesses, the Court finds as follows.

Officer Brian Jones is a police officer who has been employed by Redford Township for more than twelve years. He is with the Special Investigations Bureau and handles vice crimes, including drug crimes.

Officer Eric Woodall has been a Redford Township police officer for thirteen years. He is a narcotics officer and has been working as a task force officer with the Drug Enforcement Agency ("DEA") for six years.

Officer Jonathan Strong has been a Redford Township police officer for sixteen years. In August of 2009, he was on Redford Township's squad team, which assists with the execution of high-risk search warrants.

On August 24, 2009, Officer Jones obtained a search warrant to search a house located at

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

8452 Heyden in Detroit Michigan ("the Search Warrant"). (Govt.'s Ex. 1). The Search Warrant states that Officer Jones had received information from a reliable informant that: 1) marijuana was being distributed from 8452 Heyden; 2) large amounts of marijuana had previously been observed in the house; and 3) a shipment of marijuana was going to be delivered during the week of August 23, 2009. (*Id*. at 3).

On August 27, 2009, Officer Jones executed the Search Warrant at 8452 Heyden, along with approximately ten other officers, including Officer Woodall and Officer Strong. Before entering the house, the officers observed two vehicles parked outside: 1) a Jeep; and 2) a red Grand Am.

8452 Heyden is a single-family residence. It is a one and a half story bungalow and is approximately 800 square feet in size. The house consists of five rooms on the first floor, including a Northeast bedroom and a Northwest bedroom. A stairway on the main floor, located between the living room and the kitchen, leads to the upstairs. The upstairs consists of just one room, without a bathroom. The house also has a basement.

Upon approaching the front door of the house, the officers knocked and announced their presence. After entering the house, the officers observed four individuals in the house. Three individuals, later determined to be Eric Wilson, Makonda Beasley and Leonard Tompkins, were in the living room when the officers entered the house. Defendant – the fourth individual found in the house – was walking down the stairway from the upstairs when the officers entered the house.

Prior to conducting the search of the house, the officers proceeded to secure all four individuals in the living room.

6

Officer Strong was the officer who secured Defendant and conducted a search of his person. Officer Strong found more than $10,000.00 in United States currency in Defendant's front pocket. The Government's Exhibit 25 depicts the currency that was found on Defendant. Officer Strong testified that he took the currency out of Defendant's pocket as he found it – in several separate bundles. Officer Strong also found credit cards in Defendant's pocket, along with the keys to the Jeep that was parked outside of the residence.

After all four individuals were secured in the living room, the officers proceeded to search the house.

The Northeast bedroom had a lock on the outside of the door. The key to that lock was found on top of a coffee table in the living room. Inside the Northeast bedroom, the officers found two large, black garbage bags on the closet floor. Gallon-size, zip-lock baggies filled with marijuana were found inside of those two garbage bags. One garbage bag contained 10 baggies of marijuana, while the other garbage bag contained 7 baggies of marijuana. (*See* Govt.'s Exs. 8 & 9).

The Northwest bedroom did not have a lock on the outside of the door. Inside the Northwest bedroom, the officers found a black duffle bag in the closet. Inside that duffle bag, the officers found 5 gallon-size zip-lock baggies of marijuana. (*See* Govt.'s Ex. 10). In addition, on the top shelf inside the closet, the officers found 4 shotgun shells. (*See* Govt.'s Ex. 12a).

In the upstairs room – the room where Defendant had been just prior to the arrival of the officers – the officers found a large glass table. On top of that glass table, the officers found: 1) a digital scale; 2) two razor blades; 3) two screw drivers; and 4) small amounts of marijuana scattered across the table and on the scale. (*See* Govt.'s Ex. 13). Also in the upstairs room, the

officers found several boxes of gallon-size zip-lock baggies. (*See* Govt.'s Ex. 14).

In the basement of the house, the officers found a white, plastic bag stuffed into the rafters of the ceiling. That bag contained marijuana. (*See* Govt.'s Ex. 23). The officers also found Fed Ex boxes in the basement. (*See* Govt.'s Ex. 24).

The officers found a loaded shotgun behind the couch in the living room. The officers had to move the couch in order to find the shotgun. (*See* Govt.'s Ex. 5).

Officer Jones testified that it did not appear that the house was being used as a residence. The kitchen did not contain a stove. There was no food located in the cupboards or in the refrigerator. (*See* Govt.'s Exs. 16 & 17). There was no washing machine or dryer in the house. Officer Jones does not know if the house had running water.

Defendant, along with Eric Wilson, Makonda Beasley and Leonard Tompkins, was arrested on August 27, 2009. Officer Jones testified that he has not yet presented the matter to the Wayne County Prosecutor's Office. He explained that before doing so he was having the drugs seized on August 27, 2009, analyzed by the Michigan State Police Department's laboratory. On February 11, 2010, Officer Jones received the Laboratory Report, which confirmed that the substance seized on August 27, 2009, is marijuana. (*See* Govt.'s Ex. 21).

Probation Officer Corey Elder has been Defendant's Probation Officer since the time that Defendant's supervised release was transferred to this district.

Defendant did not advise Mr. Elder of Defendant's arrest on August 27, 2009. To the contrary, on September 2, 2009, Defendant signed a Monthly Supervision Report for the Month of August, 2009, stating that Defendant had not been arrested or questioned by any law enforcement officers. (Govt.'s Ex. 26). On that same report, Defendant indicated that he was

8

unemployed. Defendant also stated that his cash inflow, from "moving co." had been $125.00 and that his cash outflow had been $125.00. (*Id.*). Defendant stated "N/A" as to any bank account balances.

Mr. Elder learned of Defendant's August 27, 2009 arrest by receiving an F.B.I. "flash notice," which is an alert stating that a person on supervised release has been arrested or had police contact. On December 3, 2009, Mr. Elder received the police report, and learned that Wilson and Beasely both have federal felony convictions and that Tompkins has a state felony conviction.

Defendant has made two payments of $25.00 each toward his restitution during the time that Mr. Elder has been supervising Defendant. Defendant currently owes restitution in the amount of $65,647.87. Mr. Elder testified that it is not unusual for Defendants to make minimal payments toward restitution while on supervised release.

CONCLUSIONS OF LAW

The Court's disposition of the matter is governed by 18 U.S.C. § 3583. FED. R. CRIM. P. 32.1(d). Under § 3583(e)(3), a district court may revoke a term of supervised release if it finds "by a **preponderance of the evidence** that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3) (emphasis added); *United States v. Webb*, 30 F.3d 687, 688-89 (6th Cir. 1994). "The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt." *United States v. Thompson*, 314 Fed.Appx. 797, 2008 WL 4899459 (6th Cir. 2008).

Here, the Government has charged Defendant with eight separate violations of supervised

9

release. As set forth in § 7B1.1 of the United States Sentencing Guidelines, there are three grades of probation and supervised release violations:

> (1) Grade A Violations – conduct constituting (A) federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;
>
> (2) Grade B Violations – conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;
>
> (3) Grade C Violations – conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.1(a)(1). Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Defendant is alleged to have committed both Grade A and Grade C supervised release violations.

I.      Defendant Committed A Grade A Violation Of Supervised Release.

The Government contends that Defendant committed a Grade A violation because, as alleged with respect to Violation No. 1 and No. 3, he committed a federal, state or local offense.[2] Specifically, the Government contends that the evidence establishes that Defendant's actual conduct constituted: 1) unlawful possession of a controlled substance with intent to

---

[2]Although the Government alleged that Defendant possessed a firearm (Violation No. 2), after the hearing the Government conceded that violation was not supported by the evidence. The Court agrees that the Government has not established Violation No. 2.

deliver, in violation of Michigan law; and 2) frequenting a drug house, in violation of the City of Detroit's local ordinance, Sec. 38-11-6.

    A.    <u>Violation Of Local Ordinance:</u>

The Government has taken the position that a violation of the City of Detroit's local ordinance, Sec. 38-11-6, would constitute a Grade A violation. The Court disagrees.

Grade A violations are expressly defined as "conduct constituting (A) federal, state, or local offense *punishable by a term of imprisonment exceeding one year* that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense *punishable by a term of imprisonment exceeding twenty years*." U.S.S.G. § 7B1.1(a)(1) (emphasis added).

The Government alleges that Defendant violated the following City of Detroit local ordinance:

> Sec. 38-11-6. Presence in places where controlled substances are illegally stored or kept prohibited.
>     A person shall not knowingly remain in any building, apartment, store, automobile, boat, boathouse, airplane, or any other place where any controlled substance is illegally sold, dispensed, furnished, given away, stored, or kept with the intent to unlawfully use or possess such controlled substance.

(Ord. No. 15-96, § 1, 7-31-86). Sec. 38-11-7 governs the penalties for violations of the above ordinance and provides, in pertinent part:

> Sec. 38-11-7. Penalties.
> (a) Any person who shall be convicted of violating any provision of this division shall be deemed guilty of a misdemeanor and shall be punished by a fine not to exceed five hundred dollars ($500.00), or by *imprisonment not to exceed ninety (90) days*, or by both in the discretion of the court.

11

(Ord. No. 15-96, § 1, 7-31-96) (emphasis added). Thus, even if the Government were to establish that Defendant's conduct on August 27, 2009, constituted a violation of this local ordinance, that would not establish a Grade A violation because the ordinance provides for a maximum term of imprisonment of 90 days.

Accordingly, the Court concludes that the Government has not established a Grade A violation by virtue of any violation of this local ordinance.

B.  Unlawful Possession of a Controlled Substance With Intent to Deliver:

A person who violates M.C.L. § 333.7401(2)(d)(iii) by possessing with intent to deliver "less than 5 kilograms or fewer than 20 plants" faces a maximum term of imprisonment of four years. Thus, if this Court finds that Defendant's conduct on August 27, 2009, constitutes a violation of this state statute, that would constitute a Grade A violation.

To establish this offense, the Government must prove the following elements: 1) that the defendant knowingly possessed a controlled substance; 2) that the defendant intended to deliver this substance to someone else; and 3) that the substance possessed was marijuana and the defendant knew it was. CJI2d 12.3.; *People v. Moore*, 2008 WL 239595 (Mich.App. 2008).

The Court concludes that the Government has established, by a preponderance of the evidence, that Defendant's actual conduct[3] on August 27, 2009, constitutes a violation of M.C.L.

---

[3]Defense Counsel has stressed that Defendant has not yet been charged with any state or federal crimes in connection with the events of August 27, 2009. Whether Defendant is charged or convicted of any state or federal crimes as a result of his conduct on August 27, 2009, however, does not control the determination of whether he committed a Grade A violation. As explained in Application Note 1 of Section 7B1.1, the "Defendant's 'actual conduct' is the controlling consideration. The Government, therefore, need not present evidence of a conviction or even a prosecution" for the alleged federal or state offense. *United States v. Brownlee*, 297 Fed.Appx. 479, 481-82 (6th Cir. 2008); *see also United States v. McCullough*, 1999 WL 137635, at * 6 (6th Cir. 1999) (noting that U.S.S.G. §7B1.1 punishes conduct constituting a crime and

§ 333.7401.

First, the Government has met it burden of establishing that Defendant knowingly possessed marijuana. "A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive." *People v. Wolfe*, 440 Mich. 508, 519-20 (1992). "Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *Id.* Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession. *People v. Fetterley*, 229 Mich.App. 510, 515 (1998).

It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. "Instead, some additional connection between the defendant and the contraband must be shown." *Wolfe,* 440 Mich. at 520. "Any one of various factors may be sufficient under given circumstances to establish this connection." *Id*.

Here, constructive possession exists because, under the totality of the circumstances, there is a sufficient nexus between Defendant and the marijuana.

The officers had information from a reliable informant that a shipment of marijuana was expected the week of August 23, 2009. They had information that an individual who drives a red Grand Am was selling and distributing marijuana from the house. Upon arriving at the house on August 29, 2009, the officers observed that same red Grand Am parked outside, along with the Jeep that Defendant had driven there. Upon executing the search warrant, the officers found large quantities of marijuana in various areas of the approximately 800 square foot house. By

---

"allows a court to find a Grade A violation even if prosecutors do not bring charges.").

the time the search was executed, the drugs had already been packaged for resale in numerous zip-lock baggies.

Notably, in the upstairs room – the room where Defendant had been just prior to the arrival of the officers – the officers found a large glass table with a digital scale, two razor blades and two screw drivers. Small amounts of marijuana were scattered across the table and on the scale. (*See* Govt.'s Ex. 13). The room also contained several boxes of gallon-size zip-lock baggies. (*See* Govt.'s Ex. 14). Defendant's presence in that upstairs room, where small amounts of marijuana and packaging materials were in plain sight, permits the inference that Defendant had exercised control over the drugs and was aware of their presence.

In addition, at a time during which he claims to be unemployed and without any financial resources, Defendant had more than $10,000.00 in cash in his pocket. Defendant's possession of that volume of currency, in combination with the volume of individually-packaged baggies of marijuana located throughout the house, further supports the inference that Defendant had at least joint constructive possession of the drugs.

The Court also concludes that the Government has established that Defendant intended to deliver the marijuana to someone else.

"Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver. Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Wolfe,* 440 Mich. at 524.

Here, the officers had information from a reliable informant that a shipment of marijuana

was expected the week of August 23, 2009. Upon executing the search warrant on August 27, 2009, the officers found large quantities of marijuana. None of the evidence seized suggests that the marijuana was for personal use. No pipes or other paraphernalia typically used to smoke marijuana was found. To the contrary, all of the evidence indicates that the marijuana was possessed with the intent of selling it.

Notably, the marijuana recovered during the execution of the search warrant was packaged for resale in individual zip-lock baggies. In the upstairs room – the room where Defendant had been just prior to the arrival of the officers – the officers found a large glass table. On top of that glass table, the officers found a digital scale, two razor blades and two screw drivers. Small amounts of marijuana were scattered across the table and on the scale. (*See* Govt.'s Ex. 13). The officers also found several additional boxes of gallon-size zip-lock baggies. (*See* Govt.'s Ex. 14). In addition, at a time during which he claims be unemployed and without any financial resources, Defendant had more than $10,000.00 in cash in his pocket.

Thus, Defendant's intent to deliver can be inferred from the large quantity of marijuana found, the way it was packaged for resale, the presence of additional supplies and equipment for packaging to sell, evidence indicating the drugs had recently been packaged in the very room where Defendant had been when the officers arrived, and the large amount of cash in Defendant's pocket. *Wolfe, supra; see also People v. Williams*, 2007 WL 1095237 (Mich.App. 2007). Taken together, this evidence does not support an inference that Defendant was simply "at the wrong place at the wrong time." Rather, the evidence supports the inference that Defendant was a principal or primary figure in this marijuana-selling operation.

Finally, the evidence indicates that the substance possessed was, in fact, marijuana. (*See* Govt.'s Ex. 21). The above evidence also supports the inference that Defendant knew the substance was marijuana.

Accordingly, the Court concludes that the Government has established, by a preponderance of the evidence, that Defendant's actual conduct on August 27, 2009, constitutes a violation of M.C.L. § 333.7401(2)(d)(iii). Thus, Defendant has committed a Grade A violation of supervised release.

II.  Defendant Also Committed Three Grade C Violations Of His Supervised Release.

Defendant pleaded guilty to Violation No. 6 and Violation No. 8 – which the parties agree are Grade C violations. Thus, there is no dispute that Defendant committed at least two Grade C violations.

The other Grade C violations alleged by the Government are Violations Nos. 4, 5 and 7.

Violation No. 4 alleges that Defendant violated the standard condition that he "shall not frequent places where controlled substances are illegally sold, used, distributed, or administered." The Court concludes that the Government has established that Defendant violated that condition on August 27, 2009.

Violation No. 5 alleges that Defendant's failure to pay restitution constitutes a violation of Special Condition No. 2. The evidence presented to this Court indicates that Defendant has been unemployed following his release from prison but has made some minimal payments towards his restitution obligation. Defendant's probation officer, Mr. Elder, testified that it is not unusual for Defendants to make minimal payments toward restitution while on supervised release. Based on the evidence and circumstances presented here, the Court finds that the

Government has not established Violation No. 5 by a preponderance of the evidence.

Violation No. 7 alleges that Defendant violated Standard Condition No. 9, which provides that Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer. At the hearing, Defense Counsel stressed that there was no evidence presented to establish that Defendant knew that Wilson, Beasley or Tompkins were convicted felons. Defense Counsel argued that Standard Condition No. 9 is a "specific intent" violation (i.e., that the Government should have to establish that the person on supervised release knew that the individual he or she associated with was a convicted felon). Counsel for the Government argued that such intent or knowledge is not required (i.e., that a person on supervised release violates this condition even if he unknowingly associates with a convicted). Neither party has presented the Court with any authority on this issue and the Court has not found any authority on this issue. Given these facts, and lack of authority on this issue, the Court finds that the Government has not established this violation.

Accordingly, the Court finds that Defendant committed three Grade C violations of supervised release by committing Violation Nos. 4, 6 and 8.

## CONCLUSION

For the reasons set forth above, the Court finds that the Government has established, by a

preponderance of the evidence, that Defendant committed a "Grade A" violation of supervised release, along with three "Grade C" violations of supervised release.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: April 2, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 2, 2010, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager